**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01180-RMR-SBP

DOWNING WELLHEAD EQUIPMENT, LLC,

      Plaintiff,

v.

INTELLIGENT WELLHEAD SYSTEMS, INC.,
INTELLIGENT WELLHEAD SYSTEMS, CORP., and
IWS USA CORP.,

      Defendants.

---

## ORDER ON MOTION TO STAY

---

**Susan Prose, United States Magistrate Judge**

      Defendants Intelligent Wellhead Systems, Inc., Intelligent Wellhead Systems, Corp., and

IWS USA Corp. (collectively, "IWS" or "Defendants"), move to stay the case that Plaintiff

Downing Wellhead Equipment, LLC ("Downing" or "Plaintiff"), brought against them, pending

inter partes review ("IPR") of the asserted patents by the Patent Trial and Appeal Board

("PTAB") of the United States Patent and Trademark Office ("PTO"), or in the alternative, to

stay the case at least until the PTAB decides whether to institute (i.e., open) the IPR proceedings.

ECF No. 55. The court considers the motion (the "Motion") pursuant to 28 U.S.C.

§ 636(b)(1)(A) and the orders of referral. ECF Nos. 4, 56. Neither party requests a hearing, and

the court finds that it does not need one to resolve the motion.

      As follows, the court GRANTS IN PART and DENIES IN PART the motion, granting a

partial stay (except certain third-party discovery discussed in Section III.C, *infra*) only until the

PTAB decides whether to institute IPR proceedings.

I.      *Background and Procedural History*

        A.      *The Asserted Patents and Alleged Infringement*

Downing filed this action on May 10, 2023. On August 7, 2023, it amended its complaint. ECF No. 29 ("Am. Complt."). The court takes the following fact allegations from the Amended Complaint.

Downing "is a leading American oilfield solutions provider specializing in pressure-control technologies for hydraulic fracturing." Am. Complt. ¶ 10. Since 1980, it has designed, manufactured, and delivered wellhead and surface equipment to the industry from its manufacturing facility headquartered in Oklahoma City, Oklahoma. *Id.* It has an "extensive intellectual property portfolio of more than a dozen issued patents, two of which are the subject of the present litigation." *Id.*

Specifically, the two patents in suit are U.S. Patent No. 11,401,779 ("the '779 Patent"), entitled "Hydraulic Fracturing Plan and Execution of Same," issued by the PTO on August 2, 2022, and U.S. Patent No. 11,560,770 ("the '770 Patent"), of the same title and issued by the PTO on January 24, 2023 (collectively, the "Asserted Patents"). Am. Complt. ¶¶ 25, 26. Copies of the Asserted Patents are attached as Exhibits 8 and 9 to the Amended Complaint. ECF Nos. 29-8, 29-9.

Downing alleges that "[h]ydraulic fracturing increases well production by applying hydraulic pressure to create fractures in a formation, allowing increased extraction of oil and gas." *Id.* ¶ 12. "One method of fracturing, known as 'perforation' or 'plug and perforate' (PnP), involves positioning an explosive device (known as a 'perforating gun') in a well via wireline."

*Id.* ¶ 13. "Although the PnP method is the preferred fracturing method in North America due to its distinct advantages, 'the traditional plug-and-perf method is highly inefficient and requires personnel to work [] in the red zone.'" *Id.* ¶ 14 The "red zone" is "the area around any equipment pressurized by the pumps—this area is considered extremely dangerous and entering the 'red zone' is avoided to the extent possible" *Id.* n.3.

"A method known as 'zipper fracturing' was developed to mitigate non-productive time (NPT) incurred by the single-well PnP method." *Id.* ¶ 16.

"Downing has developed an improved process for hydraulic fracturing to eliminate efficiency losses (associated with zipper fracking using conventional well swap techniques), namely by enabling the hydraulic fracturing operation to continually pump fluid through the fracturing system as the operation moves from one well to the next. Thus, the corresponding pumps and other fracturing equipment may continually run until the entire fracturing operation is complete." Am. Complt. ¶ 21.

"Downing's invention is a process referred to as a 'continuous pumping swap' or 'CP swap,' which is embodied by the Asserted Patents in this case. Downing's new CP swap method provides an innovative process for transitioning from pumping one well to pumping another well in zipper fracturing operations which 'eliminates the issues that prevent[ed] continuous pumping 24 hours per day,' 'effectively eliminating non-productive and non-pumping time.'" *Id.*

"In contrast to existing, conventional methods of well swapping during zipper fracturing, Downing's CP swap method 'instantaneously transitions from one well to the other, opening the second well and subsequently shutting-in the first well, all while pumping." *Id.* ¶ 22 (citations to exhibits omitted).

"Claims 15 and 25 of the '779 Patent describe a novel method and apparatus for hydraulically fracturing a plurality of wells utilizing Downing's innovative CP swap approach." *Id.* ¶ 43. "Claims 1 and 14 of the '770 Patent describe a novel method and apparatus for hydraulically fracturing a plurality of wells utilizing Downing's innovative CP swap approach." Am. Complt. ¶ 52.

Downing alleges that IWS infringes the Asserted Patents. "Defendants provide technology solutions for hydraulic fracturing operations and digital valve control, including but not limited to Defendants' inVision Technology Platform (collectively, 'IWS's Operations Technology'), that infringes one or more claims of the Asserted Patents." *Id.* ¶ 59. According to an industry news article, the IWS Operations Technology allowed "completing 72 fracturing stages in 75.4 hours of continuous pumping" in January 2022. *Id.* ¶ 60, Ex. 5. Downing further alleges that information from IWS's website and linkedin.com webpage further support that IWS's Operations Technology permits continuous pumping in hydraulic fracking. *Id.* ¶¶ 61-65.

"Downing and Defendants are direct competitors in the market of systems and methods for controlling hydraulic fracturing operations. Downing has lost substantial sales because it competes with Defendants and IWS's Operations Technology." *Id.* ¶¶ 66-67.

Downing brings four claims for relief: that IWS (1) infringes at least claims 15 and 25 of the '779 Patent, (First Claim), (2) induces infringement of at least the same claims of the '779 Patent by IWS's customers (Second Claim), (3) infringes at least claims 1 and 14 of the '770 Patent (Third Claim), and (4) induces infringement of at least the same claims of the '770 Patent by IWS's customers (Fourth Claim).[1] Downing claims the infringement is willful and seeks

---

[1] However, as will be seen, Downing's infringement contentions identify the majority of the 36

permanent injunctive relief, statutory damages and damages, pre- and post-judgment interest, a declaration that the infringement is willful, and for the court to declare this an exceptional case and award reasonable attorney's fees and costs pursuant to 35 U.S.C. § 285. Am. Complt. at 40.

      B.      *IWS's Motion to Dismiss*

On August 21, 2023, IWS filed a motion to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 34. That motion is referred to this court for a recommendation. ECF No. 35. IWS argues therein that the Asserted Patents "claim patent-ineligible subject matter" under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218-21 (2014), because the alleged inventions merely claim computerized tasks "of what a human previously performed: monitoring and determining fluid flow conditions. Beyond that, the patents merely describe doing what humans have done for decades in this industry and for at least centuries in general, that is, opening and closing valves in response to determined fluid flow conditions." ECF No. 34 at 7 of 32. IWS further argues in its motion to dismiss that the inventors do not "explain any inventive concept," describe only a "generic computer processor," and "claim the abstract concept of determining fluid flow conditions and the insignificant next step of opening and closing valves." *Id.*

Downing opposes the motion to dismiss. ECF No. 39. Downing argues that the claimed inventions "are not directed to an abstract idea" (*Alice* "step one"), and that it adequately alleges the patent claims "contain inventive concepts" (*Alice* "step two"). IWS has replied in support of its motion to dismiss. ECF No. 40. The motion to dismiss is thus fully briefed.

---

claims of the '779 Patent and all claims of the '770 Patent. Motion at 6.

C.      *The Schedule and Status of Discovery in this Case*

This court held a scheduling conference in this case on August 30, 2023. ECF No. 37 (minutes), ECF No. 45 (transcript). The scheduling order set deadlines through the end of expert discovery, but consistent with Judge Rodriguez's practice, this court did not set a deadline for dispositive motions, a final pretrial conference or trial date. ECF Nos. 37, 38 (scheduling order).[2] The parties have exchanged their infringement contentions, invalidity contentions, and apparently their respective responses thereto. Motion at 6. Downing's infringement contentions involve a total of 56 claims in the Asserted Patents—18 of 36 claims in the '779 Patent and all 38 claims in the '770 Patent. *Id.* at 6, 10. They have also apparently exchanged written discovery requests and discussed issues concerning them. Motion at 6-7.

The parties' joint disputed claim term chart is due at the end of this month (February 28, 2024). Claim construction briefs are due March 26, 2024. No claim construction hearing has been set. Fact discovery does not close until October 31, 2024. The parties' affirmative expert disclosures are not due until December 16, 2024. Rebuttal expert disclosures are due January 24, 2025, and expert discovery does not close until March 28, 2025. ECF Nos. 37/38. IWS states that no depositions have yet been scheduled. Motion at 4.

D.      *IWS's Petitions for IPR*

On December 1, 2023, and December 15, 2023, respectively, IWS petitioned for IPR of the '779 Patent and '770 Patent. ECF No. 61-1, 61-2 (the "IPR Petitions").[3] *See also* ECF Nos. 53, 54 (IWS's Notices of Related Cases attaching the IPR Petitions). Specifically, IWS

---

[2] Judge Rodriguez does not set the trial date until dispositive motions (if any) are resolved. *See* RMR_Standing_Order_re_Trial_and_Pretrial_Procedures.pdf (uscourts.gov) at 1.

[3] It is undisputed that IWS timely filed the IPR Petitions under 35 U.S.C. § 315(b).

petitioned for reexamination of most of the claims of the '779 Patent and all of the claims of the '770 Patent. *See, e.g.*, ECF No. 61-1 at 19 of 107; No. 61-2 at 20 of 112. The challenged claims include all of those that Downing specifically alleges in the Amended Complaint.

## II.     Legal Standards

### A.     The Legal Background for the IPR Process

The Supreme Court has helpfully described the background for IPR proceedings:

> After a patent issues, there are several avenues by which its validity can be revisited. The first is through a defense in an infringement action. Generally, one who intrudes upon a patent without authorization "infringes the patent" and becomes subject to civil suit in the federal district courts, where the patent owner may demand a jury trial and seek monetary damages and injunctive relief.

*Return Mail, Inc. v. United States Postal Serv.*, 587 U.S. ---, 139 S. Ct. 1853, 1859, 204 L. Ed. 2d 179 (2019) (citing 35 U.S.C. §§ 271(a), 281–284). "Once sued, an accused infringer can attempt to prove by clear and convincing evidence "that the patent never should have issued in the first place." *Id.* (quoting *Microsoft Corp. v. i4i L.P.*, 564 U.S. 91, 96–97 (2011); citing 35 U.S.C. § 282(b)).

Another avenue for challenging validity is to petition "[t]he Patent Office [to] . . . reconsider the validity of issued patents." *Return Mail*, 139 S. Ct. at 1859.

> In 2011, Congress overhauled the patent system by enacting the America Invents Act (AIA), which created the Patent Trial and Appeal Board and phased out [a prior procedure for review of patents,] inter partes reexamination. See 35 U.S.C. § 6; H. R. Rep. No. 112–98, pt. 1, pp. 46–47. In its stead, the AIA tasked the Board with overseeing three new types of post-issuance review proceedings.
>
> First, the "inter partes review" [(IPR)] provision permits "a person" other than the patent owner to petition for the review and cancellation of a patent on the grounds that the invention lacks novelty or nonobviousness in light of "patents or printed publications" existing at the time of the patent application. § 311.

*Return Mail*, 139 S. Ct. at 1860. *See also Thryv, Inc. v. Click-To-Call Techs., LP*, 590 U.S. ---,

140 S. Ct. 1367, 1370 (2020) (citing *Cuozzo Speed Techs.*, *LLC v. Lee*, 579 U.S. 261, 267

(2016)).

> Under the statutory provisions authorizing the IPR proceeding:
>
> [A] person who is not the owner of a patent may file with the Office a petition to
> institute an inter partes review of the patent. A petitioner . . . may request to cancel
> as unpatentable 1 or more claims of a patent only on a ground that could be raised
> under section 102 or 103 and only on the basis of prior art consisting of patents or
> printed publications.

35 U.S.C. § 311(a), (b) (in relevant part, paragraph break omitted). Petitions are filed with the

PTAB. 37 C.F.R. § 42.108. The patent owner has the right to file a preliminary response within

three months of the PTAB's notice of filing date. 35 U.S.C. § 313; 37 C.F.R. § 42.107(b).

Downing plans to respond to both IPR Petitions. ECF No. 61 ("Resp.") at 4 n.2.[4] The PTAB has

three months from the response in which to decide whether to institute the IPR. 35 U.S.C.

§ 314(b). Thus, in this case, the deadlines for decisions are respectively June 11, 2024, and June

28, 2024. *See* Motion at 7; Resp. at 4.

The standard for opening an IPR proceeding is (based on the petition and any response)

"a reasonable likelihood that the petitioner would prevail with respect to at least [one] 1 of the

claims challenged in the petition." 35 U.S.C. § 314(a). "The determination by the Director

whether to institute an inter partes review under this section shall be final and nonappealable." 35

U.S.C. § 314(d). *See also Thryv*, 140 S. Ct. at 1373 (construing scope of § 314(d)'s bar of

judicial review of institution decisions). Once opened, an IPR "is a trial subject to the

---

[4] IWS "may seek leave to file a reply to the preliminary response" for good cause. 37 C.F.R.
§ 42.108(c). But doing so does not appear to change the deadline for an institution decision.

procedures" set by the PTO's regulations. 37 C.F.R. § 42.100(a).

The final decision on IPR must issue within one year of institution, but for good cause the PTAB may extend that deadline by up to six months. 35 U.S.C. § 316(a)(11). The parties may appeal the PTAB's decision to the Federal Circuit. 35 U.S.C. §§ 319, 141. Once a "final written decision" issues, the petitioner "may not assert either in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e). This statute "generally preclude[s] a party from relitigating issues in any subsequent proceedings in federal district court." *Return Mail*, 139 S. Ct. at 1867 n.10.

> By providing for inter partes review, Congress, concerned about overpatenting and its diminishment of competition, sought to weed out bad patent claims efficiently. *See* [*Cuozzo*,] . . . 136 S. Ct., at 2139–2140; H. R. Rep. No. 112–98, pt. 1, p. 40 (2011) ("The legislation is designed to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.")

*Thryv*, 140 S. Ct. at 1374.[5]

---

[5] In addition, a bill (the "PREVAIL Act") was introduced in the Senate and referred to the Committee on the Judiciary on July 10, 2023, proposing to amend the AIA. Actions - S.2220 - 118th Congress (2023-2024): PREVAIL Act | Congress.gov | Library of Congress. Among other things, the bill includes this proposed finding:

> Unintended consequences of the comprehensive 2011 reform of patent laws have become evident during the decade preceding the date of enactment of this Act, including . . . the unnecessary duplication of work by the district courts of the United States and the Patent Trial and Appeal Board, all of which drive down investment in innovation and frustrate the purpose of those patent reform laws.

Senate Bill S 2220, 118th Congress, 1st Session, 2023 Cong US S 2220, § 2(10) (July 10, 2023). The bill appears to remain pending with the Senate Committee on the Judiciary.

*B.        Motions to Stay Pending Reexamination*

The decision whether to stay a case is in the court's discretion. *Procter & Gamble v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)); *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55 (citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)).

In considering whether to stay an action pending reexamination, the court generally considers:

> (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court.

*eSoft v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 787 (D. Colo. 2007) (granting motion to stay pending inter partes reexamination, noting that a "PTO decision to cancel a patent renders the patent unenforceable in pending litigation."). "Courts frequently collapse the first and fourth factors. None of these factors is controlling; rather, courts determine whether a stay is appropriate based on the totality of the circumstances." *Let's Go Aero, Inc. v. U-Haul Int'l, Inc.*, No. 16-cv-00410-REB-NYW, 2016 WL 11694752, at *2 (D. Colo. Dec. 7, 2016) (internal citations and quotation marks omitted, denying renewed motion to stay pending ex parte reexamination and arbitration).

"[T]he legislative history surrounding the establishment of the reexamination proceeding evinces *congressional approval of district courts liberally granting stays*. Further, when a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved." *eSoft,* 505 F. Supp. 2d at 786 (internal citation and quotation marks omitted, emphasis added).

In the words of a Federal Circuit judge, "the benefits of reexamination are . . .: giving the PTO an opportunity to reconsider patents that have become the focus of litigation, relieving the courts of the need to decide some patent validity issues, and saving the courts from adjudicating infringement claims based on patents of questionable validity." *British Telecomms. PLC v. IAC/InterActiveCorp,* No. CV 18-366-WCB, 2020 WL 5517283, at *4 (D. Del. Sept. 11, 2020) (J. Bryson, sitting by designation). The legislative history for the statute authorizing reexamination reflects that Congress wished "*to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure." Id.* (emphasis added, quoting H.R. Rep. No. 96-1307, part 1 at 4 (1980)).

> Moreover, the House Report anticipated that reexaminations would "provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner," and that reexaminations would permit the validity of patents to be tested *in the PTO "where the most expert opinions exist and at much reduced costs."*

*Id.* (emphasis added).

The same reasoning applies to IPR proceedings. Congress's "purpose in replacing the pre-AIA *inter partes* reexamination procedure with IPR in the AIA was to 'giv[e] the Patent Office significant power to revisit and revise earlier patent grants.'" *Smith Sport Optics, Inc. v. Burton Corp.*, 601 F. Supp. 3d 936, 939 (D. Colo. 2022) (quoting *Cuozzo*, 579 U.S. at 272, and

citing H.R. Rep. No. 112-98, pt. 1, at 45, 48 (2011), 157 Cong. Rec. 9778 (2011) (Rep. Goodlatte noting that IPR "screen[s] out bad patents while bolstering valid ones")).

Thus, this District applies the *eSoft* factors to motions to stay that relate to IPR proceedings. *See, e.g.*, *Smith Sport Optics*, 601 F. Supp. 3d at 940-41; *Cellect LLC v. Samsung Elecs. Co.*, No. 19-cv-00438-CMA-MEH, 2020 WL 3425166, at *2 (D. Colo. June 23, 2020) (citing *Kamstrup A/S v. Axioma Metering UAB*, No. 19-cv-1669-WJM-SKC, 2019 WL 6296699, at *2 (D. Colo. Nov. 25, 2019)). Similarly, Judge Bryson found a "'liberal policy' in favor of staying cases . . . pending [covered business method and] other post-grant proceedings." *Id.*; *see also Fusion Specialties, Inc. v. China Network Leader, Inc.*, No. 12-cv-00009-CMA-KMT 2012 WL 3289077 (D. Colo. Aug. 11, 2012) ("Generally, 'there exists a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings,'" quoting *Broadcast Innovation, L.L.C. v. Charter Commc'n, Inc.*, No. 03-cv-2223, 2006 WL 1897165, at *4 (D. Colo. July 11, 2006)).

In short, the same set of principles generally apply to motions to stay pending any of the several forms of post-grant proceedings—whether the former inter partes reexamination, ex parte reexamination, IPR, post-grant review, or covered business methods review—keeping in mind that differences among these procedures can be relevant to whether a stay is warranted in a given case. *British Telecomms.,* 2020 WL 5517283, at *2. Still, much as decisions in this District have done, Judge Bryson noted that "[u]ltimately the Court must decide stay requests on a case-by-case basis, and whether a stay should be granted turns in each case on the totality of the circumstances." *Id.* at *5 (internal quotation marks omitted).

III.    *Analysis*

IWS requests that this case be stayed indefinitely "while the IPR process unfolds," or in the alternative, "at a minimum, . . . until the pending institution decision[s] issue[]" in mid-June 2024. Motion at 3 n.5. There is little to no point in staying the case *indefinitely* for an IPR proceeding that has not yet been instituted. But this court does find, as follows, that a stay until the PTAB makes those decisions by mid-June 2024 is warranted under the *eSoft* factors.

A.    *The First and Fourth Factors: Will the IPR Petitions Simplify Issues and Reduce the Burden of this Litigation?*

IWS argues that even if the PTAB institutes only one of the two requested IPRs, it is likely to simplify issues and reduce the burden of this litigation. IWS argues that although the PTAB has until mid-June 2024 to decide whether it will open either or both of the IPRs, a stay is appropriate now because the parties will otherwise launch into claim construction work this month, with the briefs due toward the end of March 2024. Downing opposes, arguing that the IPRs are not likely to be instituted due to flaws therein, that both of the IPR Petitions would need to proceed in order to simplify the issues (or at least, to reduce the burden of this litigation), and at the very least, the motion to stay is premature until the PTAB decides whether to institute the requested IPRs.

This court concludes that the IPR proceedings—*if either or both are instituted*—would likely simplify the issues in this case and reduce the burden of this litigation.[6] First, if either IPR proceeds and results in cancelling any of the Asserted Patents' claims, the scope of the claims in

---

[6] This court notes that as the referral judge in this case, this court will not hear the parties' claim construction or dispositive motions unless Judge Rodriguez refers them to this court for recommendations.

this case (or perhaps their construction, depending on the PTAB's reasoning) may change. As Judge Wang concluded in *Let's Go Aero*:

> At this juncture, there is no way for this court to predict whether or how the USPTO's reexamination may affect the scope of the claims; however, claim construction and trial on the merits will be unnecessary for any asserted claims that are canceled. . . . In addition, even without cancellation, depending on the representations of the patentee during a[] . . . reexamination and amendments made, damages might be limited or eliminated.

*Let's Go Aero*, 2016 WL 11694752, at *3 (collecting cases). Moreover, the legislative history plainly indicates that Congress intended the IPR as a cost-effective alternative to litigating a patent's validity under §§ 102 and 103 in federal court.

In addition, if any of the Asserted Patents' claims are cancelled, that may change the scope of IWS's pending motion to dismiss. The court recognizes that the motion to dismiss raises very different issues than the IPR Petitions, because the motion to dismiss concerns § 101 issues under *Alice*, while the IPR Petitions (by statute) are limited to §§ 102 and 103 issues. But it would be less burdensome for this court to not spend its limited resources on *Alice* questions while the PTAB decides if any part of the Asserted Patents likely fails for the reasons argued in the IPR Petitions.

This court cannot predict whether the PTAB will institute either IPR Petition, but Downing recognizes that, based on current statistics, there is a better than 50-50 chance that at least one of them will be instituted. It recognizes that the PTO's current statistics show an IPR institution rate overall (for one petition) is 67%.[7] Resp. at 6. Downing cites *Cocona, Inc. v. VF*

---

[7] *See* https://www.uspto.gov/sites/default/files/documents/ptab_aia_20231130_.pdf, at 6 (fiscal year 2023). The same document reflects an institution rate (per petition) of 66% in fiscal year

*Outdoor, LLC*, No. 16-cv-02703-CMA-MLC, 2018 WL 10910847, at \*4-5 (D. Colo. Mar. 19, 2018), for its holding that a 68% institution rate was "not so strong as to weigh in favor of a pre-institution stay," but in the paragraph immediately before, the court noted "the unique procedural scenario that Cocona presents here, in which it needs to 'catch up' discovery of [a second defendant] post-consolidation of the two cases for pretrial purposes." *Id.* at \*4. The plaintiff in that case, Cocona, originally brought one action against two separate accused infringers. After the claims were severed, Cocona filed a separate action against the second defendant. But there was significant delay of discovery in that case due to a motion to transfer. *Id*. at \*1. After the motion to transfer was denied, Cocona needed to "catch up" the discovery in that action, but then the IPR petition was filed. The court's holding in *Cocona* that a 68% institution rate did not in itself support a pre-institution stay must be understood in that unique procedural context. In addition, *Cocona* did not deny a stay entirely; it stayed the consolidated cases until the institution decision but allowed the patent owner to "proceed as to [the second defendant] with the phased discovery permitted in the Scheduling Order . . . so as to bring that discovery to a par" with the first action. *Id.* at \*9.

Downing also argues that the probability *both* IPR Petitions will be instituted is less than 50%, and that unless both petitions are instituted, there will be no significant simplification or decreased burden in this case. Downing notes that the two petitions "assert different grounds against each Asserted Patent—they will not rise or fall together." Resp. at 9. Downing argues

2022 and for fiscal year 2024 (year to date at the time). *See also Personalis, Inc. v. Foresight Diagnostics Inc.*, No. 22-cv-01913-CNS-NRN, 2023 WL 371931, at \*5 (D. Colo. Jan. 24, 2023) (finding a 65% IPR institution rate per patent and 59% per petition for fiscal year 2021).

that if only one of the IPR Petitions is instituted (and proceeds to a final decision), IWS would not be estopped under 35 U.S.C. § 315(e) from pursuing invalidity theories as to the other patent. Thus, in Downing's view, unless both IPR Petitions are instituted, the court would still have to rule on all of IWS's invalidity theories. And, in any case, IWS did not bring all of its voluminous invalidity contentions in the IPR Petitions. Resp. at 10.

However, even if only one of the IPR Petitions is instituted, it would mean that the PTAB believes IWS is more likely than not to prevail on at least one of the patent claims that it challenges therein. And even if an instituted IPR does not cancel any of the claims, the PTAB may provide reasoning that would assist the court in resolving this case: i.e., the potential simplification and reduction of burden in this case is not limited to the scope of estoppel under § 315(e).[8] The court concludes that institution of even one of the IPR Petitions is likely to simplify the issues and reduce the burden of this case.

Downing also points to cases that *Cocona* cites for the proposition that the "majority of courts that have addressed the issue have postponed ruling on stay requests or have denied stay requests when the PTAB has not yet acted on the petition for review." *Cocona*, 2018 WL 10910847, at *4; *Trover Group, Inc. v. Dedicated Micros USA*, No. 2:13-cv-1047-WCB, 2015 WL 1069179, at *5 (E.D. Tex. Mar. 11, 2015); *VirtualAgility Inc. v. Salesforce.com, Inc.,* 759 F.3d 1307, 1316 (Fed. Cir. 2014) (finding "a district court is not obligated to 'freeze' its

---

[8] In its Reply, IWS does not address whether, if only one IPR is instituted, it may still raise again in this case any arguments the PTAB rejects as to the other Asserted Patent. This court does not speak for Judge Rodriguez, but to the extent that scenario would occur in a motion referred to this court, this court would expect, in light of IWS's Reply, that IWS would be efficient and not re-raise rejected arguments if the reasoning is the same as to both patents.

proceedings between the date that the motion to stay is filed and the date that the PTAB decides on [whether to hear] the CBM [covered business method] petition.").

In *Trover*, Judge Bryson (apparently sitting by designation) notes the majority of courts at that time denied motions to stay until the PTAB acted on a petition for review. *Trover*, 2015 WL 1069179, at *5. He cites a very lengthy list of cases in support, but three points stand out: (1) None of those cases are from this District, and "as the Federal Circuit noted, some district courts have granted stays even before the PTAB has granted the petition for review." *Id.* (2) In *Trover*, the IPR petition was not filed until after the parties filed their joint claim construction statement. The motion to stay was not filed until a month later, and by that time, the parties were already in the midst of claim construction briefing. *Id.* at *1. (3) Like *Cocona, Trover* involved consolidated actions. Only some of the defendants filed the IPR petition, and one of the non-petitioner defendants did not agree to be estopped by any IPR outcome until the hearing on the motion to stay, which was held the same day as the claim construction hearing. *Id.* at *4 n.1. Judge Bryson had discretion to proceed with the case in that way, but that does not mean that this court should do likewise here, where the parties and the court are not yet in the middle of claim construction.[9]

Downing further contends that the IPR Petitions are not likely to be granted because they lack merit. Resp. at 11-14. These arguments ask the court to weigh in on the issues that the PTAB will still have to decide in determining whether to institute the IPR proceedings. This

---

[9] Downing also cites *Audio MPEG, Inc. v. Hewlett-Packard Comp.*, No. 2:15-cv-73, 2015 WL 5567085, at *2 (E.D. Va. Sept. 21, 2015), for this court having discretion under *VirtualAgility* to decline to stay the case before the PTAB's institution decision, but *Audio MPEG* granted the stay. *Id.* at *6.

court declines to duplicate efforts with the PTAB, as it is more efficient to rely on the PTO's expertise in addressing the IPR Petitions' prior art issues:

> Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation. . . . Courts recognize that shifting the patent validity issue to the PTO has many advantages, including . . . [that] all prior art presented to the court will have been first considered by the PTO, with its particular expertise.

*eSoft*, 505 F. Supp. 2d at 786 (citing *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002) (citing H.R. Rep. No. 1307, 96th Cong., 2d Sess., pt. 7 at 4 [1980], reprinted in 1980 U.S.C.C.A.N. 6460)).

In this case, the PTAB's institution decisions are due by June 11 and June 28, 2024. As of the date of this order, the latter of those dates is less than five months away. In the meanwhile, the parties are at the doorstep of claim construction, and this court would also very likely need to issue a recommendation on the motion to dismiss (filed in August 2023) before then. The request for a stay until the PTAB decides whether to open IPR proceedings is thus not premature. *See, e.g.*, *Smith Sport Optics*, 601 F. Supp. 3d at 941 (where institution decision was due "within the next few months," a stay until that decision was appropriate); *Let's Go Aero*, 2016 WL 11694752, at *1 (reflecting a previous stay until the PTAB decided whether to accept the request for ex parte reexamination); *Personalis, Inc. v. Foresight Diagnostics Inc.*, No. 22-cv-01913-CNS-NRN, 2023 WL 371931, at *5 (D. Colo. Jan. 24, 2023) (granting stay before PTAB decided whether to institute IPR).

In short, the first and fourth factors favor a stay until the PTAB decides whether to institute either or both IPR Petitions.

*B.*     *The Second Factor: How Far Along is this Case?*

The second factor simply asks whether "discovery is *complete* and whether a trial date has been set," *eSoft*, 505 F. Supp. 2d at 787 (emphasis added), to determine whether the IPR would interfere with the court's docket or otherwise work against efficiency for the parties or the court. Downing does not dispute that discovery is in its initial stages, no trial date has been set, and that this factor weighs in favor of a stay. Resp. at 15. This factor clearly weighs in favor of a stay.

*C.*     *The Third Factor: Undue Prejudice to Downing or Strategic Benefit to IWS?*

The third *eSoft* factor asks whether a stay "would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party." *eSoft,* 505 F. Supp. 2d at 786. Downing argues that, under precedent in this District, this factor weighs against a stay because IWS is a direct competitor of Downing. Resp. at 15-16.

"When two parties are in competition in the marketplace, there is a risk that a patent-holder whose patent is being infringed will be prejudiced in ways that are not easily calculated to render monetary damages." *Cellect*, 2020 WL 3425166, at *6; *see also Well Master Corp. v. Flowco Prod. Sols., LLC*, No. 21-cv-02145-CMA-KLM, 2022 WL 4129399, at *6 (D. Colo. Sept. 12, 2022) (when direct competitors are involved, "courts presume that a stay will prejudice the non-movant); *Personalis, Inc. v. Foresight Diagnostics Inc.*, No. 22-cv-01913-CNS-NRN, 2023 WL 371931, at *5 (D. Colo. Jan. 24, 2023) ("Because the Parties . . . are direct competitors, this Court agrees that this factor weighs against a stay.")

IWS replies that Downing does not point to *facts* to show that the parties are direct competitors. However, Downing alleges this fact in its pleading. *See* Am. Complt. ¶¶ 66-67.

Based on the allegations and the exhibits attached to the Amended Complaint—which reflect that both companies provide wellhead equipment to the hydraulic fracking industry, and both companies advertise that these products are capable of continuous pumping—this court is satisfied for purposes of the present motion that the parties are direct competitors.

Downing also argues that it needs and plans to "pursue third-party discovery to substantiate its theory" that the "*Krupa*" reference[10] (on which IWS relies for several arguments in the IPR Petitions) should be removed as prior art under § 102(b)(2)(A) "because the subject matter of *Krupa* was derived from Downing," specifically from its public disclosure of the claimed invention to a customer it shared with the assignee of *Krupa*. Resp. at 17. Downing argues that third-party discovery is not available in IPR proceedings.

In reply, IWS points out that a specific statute provides a procedure for subpoenas "for use in any contested case in the Patent and Trademark Office"—which requires federal district courts to issue said requested subpoenas and provides that the federal discovery rules apply. 35 U.S.C. § 24. Reply at 10-11. The PTAB's rules for contested cases provide that a party therein can seek to "compel testimony or production of documents or things" by filing a motion for authorization. 37 C.F.R. § 41.156(a). The Tenth Circuit construes § 24 and this rule as permitting subpoenas for not only depositions (or depositions and documents) but also just documents, if Downing wishes. *El Encanto, Inc. v. Hatch Chile Co., Inc.*, 825 F.3d 1161, 1165 (10th Cir. 2016).

However, the court understands Downing's point regarding third-party discovery to be, in

---

[10] IWS cites *Krupa* as U.S. Patent Publication No. 2022/0268141. *See* ECF No. 61-1 (IPR Petition on the '779 Patent) at 7, 24.

part, that unless and until an IPR is instituted, the PTO/PTAB subpoena procedure will not be available to Downing. And if this court entirely stays the case until the institution decision, that would preclude Downing from issuing subpoenas under the auspices of this case for up to almost five months—despite that proposed third-party discovery being directly relevant to Downing's response to IWS's *Krupa* arguments in both this case (*see, e.g.,* ECF No. 61-3 at 18 of 22; No. 61-4 at 3, 5-9 of 441) and the IPR Petitions.[11] This would unnecessarily delay Downing's ability (and IWS's too, if it wishes) to pursue this discrete discovery.

In its reply, IWS further argues that Downing's ability to show undue prejudice is undercut by the fact that it has not yet sought a preliminary injunction. Reply at 9-10. As a new issue raised only in reply that IWS could have made in its Motion, this argument does not carry much weight here. In addition, this case is in an early phase. IWS recognizes that the parties have not yet set depositions, and it appears they are also still discussing their respective responses to first sets of written discovery. Under these circumstances, this court does not find that the absence of a preliminary injunction motion undercuts Downing's assertion that it will be prejudiced by a stay.

As to the supposed strategic benefit to IWS of a stay, the court "considers the timing of . . . [the] IPR petition filings at the PTO." *Cellect*, 2020 WL 3425166, at *6. The timing of the IPR Petitions does not suggest that IWS intends the petitions to serve as vehicles for obtaining

---

[11] Downing received the invalidity contentions (mentioning *Krupa*) and the IPR Petitions in late November and mid-December 2023. IWS does not argue (nor does it appear to this court) that Downing wasted any time in deciding whether to issue subpoenas on this issue. *Krupa* is only one issue among many in IWS's voluminous contentions. *See, e.g.*, ECF No. 61-4 (devoting a few pages to *Krupa* in a 441-page document). IWS served the supplemental invalidity contentions and IPR Petitions only a matter of days before its motion to stay.

unfair advantage or delay. IWS filed the petitions shortly after serving its invalidity contentions on November 22, 2023. Motion at 6. The only tactical advantage that IWS would obtain is that, if the court were to stay this case entirely now, Downing would be prevented from subpoenaing the information it seeks to obtain to respond to IWS's *Krupa* arguments.

On balance, then, the court finds that the third factor weighs against a stay, unless the court makes an exception for discovery pursuant to subpoena as relating to *Krupa* as alleged prior art. Overall, considering the circumstances here—including that the first, second, and fourth *eSoft* factors favor a stay until the PTAB's institution decisions—the court finds that a partial stay is warranted: except for third-party discovery (by either side) relating to *Krupa* as alleged prior art, this case is stayed until the PTAB decides whether to institute the IPR proceedings.

IV.    *Conclusion*

For the foregoing reasons, this court GRANTS IN PART and DENIES IN PART the Motion to Stay (ECF No. 55). **Except for third-party discovery (by either side) relating to *Krupa* as alleged prior art, this case is STAYED until the PTAB decides whether to institute the IPR proceedings.** This court will issue separately a recommendation to deny IWS's motion to dismiss without prejudice to refiling after the stay is lifted. The parties shall file a status report within **five business days** of the PTAB's decisions whether to institute the IPR proceedings. This order is without prejudice to either party seeking a further stay (after conferral) if any IPR proceeding is instituted.[12]

---

[12] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written

DATED: February 14, 2024                    BY THE COURT:

Susan Prose
United States Magistrate Judge

---

objections with the Clerk of the United States District Court for the District of Colorado. 28
U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will
result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See
Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver
rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119,
1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require
review, including when a "pro se litigant has not been informed of the time period for objecting
and the consequences of failing to object").